UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY E. HOWARD, | No. 2:16-cv-1200 TLN KJN P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS & RECOMMENDATIONS |
| S. WILLIAMSON, et al., | |
| Defendants. | |

I. Introduction

Plaintiff is a state prisoner, proceeding without counsel. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and is proceeding in forma pauperis. This action proceeds on plaintiff's claims that on November 1, 2013, defendants Williamson, Molten, and Bookout used excessive force, in violation of the Eighth Amendment, while plaintiff was on the ground. (ECF No. 6 at 2.) On March 7, 2017, defendants filed a motion for summary judgment on the grounds that this action is time-barred and plaintiff failed to first exhaust his administrative remedies. Plaintiff seeks a second, sixty-day extension of time in which to oppose the motion. In addition, plaintiff filed a document styled, "Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order," which the court construes as a motion for injunctive relief. For the reasons set forth below, the undersigned recommends that the motion for injunctive relief be denied, and grants plaintiff's requests for extension of time.

1

II. Motion for Injunctive Relief

The court first addresses plaintiff's motion for injunctive relief.

A. Legal Standards

A temporary restraining order is an extraordinary and temporary "fix" that the court may issue without notice to the adverse party if, in an affidavit or verified complaint, the movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." See Fed. R. Civ. P. 65(b)(1)(A). The purpose of a temporary restraining order is to preserve the status quo pending a fuller hearing. See generally, Fed. R. Civ. P. 65; see also L. R. 231(a). It is the practice of this district to construe a motion for temporary restraining order as a motion for preliminary injunction. Local Rule 231(a); see, also, e.g., Aiello v. OneWest Bank, 2010 WL 406092, *1 (E.D. Cal. 2010) (providing that "'[t]emporary restraining orders are governed by the same standard applicable to preliminary injunctions'") (citations omitted).

The party requesting preliminary injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008); Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting Winter). The Ninth Circuit has held that, even if the moving party cannot show a likelihood of success on the merits, injunctive relief may issue if "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation omitted). Under either formulation of the principles, preliminary injunctive relief should be denied if the probability of success on the merits is low. See Johnson v. California State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995) ("'[E]ven if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of

////

2

success on the merits.'" (quoting Martin v. Int'l Olympic Comm., 740 F.2d 670, 675 (9th Cir. 1984)).

In addition, as a general rule this court is unable to issue an order against individuals who are not parties to a suit pending before it. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100 (1969). A federal district court may issue emergency injunctive relief only if it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit. See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required to take action in that capacity, only upon service of summons or other authority-asserting measure stating the time within which the party served must appear to defend."). The court may not attempt to determine the rights of persons not before it. See, e.g., Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 234-35 (1916); Zepeda v. INS, 753 F.2d 719, 727-28 (9th Cir. 1983); see also Califano v. Yamasaki, 442 U.S. 682, 702 (1979) (injunctive relief must be "narrowly tailored to give only the relief to which plaintiffs are entitled"). Under Federal Rule of Civil Procedure 65(d)(2), an injunction binds only "the parties to the action," their "officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation." Fed. R. Civ. P. 65(d)(2)(A)-(C).

B. Plaintiff's Allegations

Plaintiff initially seeks an order against defendants Williamson, Molten, and Bookout, and nonparties Warden Baughnan, Officers Queet, Clough, Garcia, Hanre, "and others within their official and individual capacities," and the "CCPOA[1] Guards Union." (ECF No. 25 at 1.) Plaintiff claims that during the pendency of these proceedings, he has suffered numerous personal injuries, and denied medical care, pain medication, an MRI, and referral to an outside specialist. (ECF No. 25 at 2.) Plaintiff sets forth the following examples:

1. "Overcrowded, unsafe, or extremely harsh conditions." Plaintiff's single cell status was revoked on September 25, 2012. On January 3, 2013, plaintiff was a victim of in cell violence with weapons and suffered bite marks on his chest and arms.

---
[1] CCPOA is the acronym for the California Correctional Peace Officers Association.

2. "Unnecessary Excessive Use of Force." On November 1, 2017 [sic], plaintiff suffered dislocated shoulders, permanent eye damage, blurred vision, left wrist bone taken out of socket, and spinal cord bent, causing extreme lower back pains, from which he suffers when he lays down, sits or stands for too long, causing "irreparable injury." (ECF No. 25 at 2.)

3. "Inadequate medical care." Plaintiff claims that Dr. Ma, Dr. Hamkar and "other medical officials" deny medical care and attention. (ECF No. 25 at 3.)

4. "A pattern of guard brutality or harassment." Plaintiff claims there is a "constant harm on [his] life" and his safety and security are jeopardized by "loss of personal property, destruction of legal property, constant lock-downs, administrative segregation, Security Housing Unit lockdown, false reports, falsifying evidence, and one day access to law library during Ad-Seg time." (ECF No. 25 at 3.) During his 60 day court ordered extension, plaintiff was only able to attend law library three times, and his legal property was only partially received on May 19, 2017. (Id.) On May 15, 2017, during his release from the housing unit, correctional officer Dennis, who is white, loudly spoke racial slurs including, "Black lives don't matter," "disappearance to Black Panthers, Black Power," and showed off unprofessional conduct in front of opposite sex co-worker.

5. "Continuing violation of any of [plaintiff's] rights." (ECF No. 25 at 3.)[2] On January 9, 2017, a melee took place between Bay area (Blacks) and "STG's." (ECF No. 25 at 4.) Prison guards fired two to three shots from the Mini 14 specifically targeting the Blacks only. The resulting lengthy lockdown resulted in the denial of plaintiff's due process and Eighth Amendment rights, including loss of yard privileges, credit loss, package restriction, and damage to his PLU (priority library user) status based on the court's order. (ECF No. 25 at 4.)

On April 4, 2017, another melee took place between the same groups, and plaintiff contends the guards fired three to four shots from the Mini, again specifically targeting Black inmates. (ECF No. 25 at 4.) Plaintiff was shot in the left leg, and Captain Clough allegedly told

---

[2] Plaintiff also includes details concerning a January 2, 2017 conference call with defense counsel who apparently attempted to settle this action. Such negotiations are not relevant to plaintiff's request for injunctive relief.

4

medical staff to deny Blacks all medical attention.  Plaintiff alleges that both melees were "allowed."  (Id.)  Plaintiff states that if he is left in a Level IV prison setting, he fears retaliation or set-up in a racially-motivated riot or melee, to be killed like inmate Hugo Pinnel.  (ECF No. 25 at 5.)  Plaintiff claims prison officials work with known STG's to attack and use violence against another race, jeopardizing safety and security to exploit financial gains or profit, and the CCPOA supports these racial attacks and racial discrimination.  (ECF No. 25 at 5-6.)  Plaintiff claims that the "Green Wall" is under investigation.

As relief, plaintiff seeks an immediate transfer to a Level III medical facility treatment center such as Vacaville, R.J. Donovan or CMC East.  He asks the "court to consider an ongoing violation of [his] constitutional rights to be 'irreparable injury.'"  (ECF No. 25 at 5.)  While not clear, it appears plaintiff also seeks an order prohibiting guards to enter the prison law library, and to "turn in" A. Denneli, who denied plaintiff's PLU status on May 24, 2017.  (ECF No. 25 at 6.)

C. Discussion

While the court is sympathetic to plaintiff's difficulties in prison, the undersigned recommends that the motion be denied.  The individuals Dr. Ma, Dr. Hamkar, Captain Clough, Officer Dennis, A. Denneli, Warden Baughnan, Officers Queet, Garcia, Hanre, and the "CCPOA Guards Union," are not defendants in this case.  Although plaintiff refers to defendants Williamson, Molten, and Bookout in his motion, plaintiff includes no facts connecting them with the specific incidents set forth therein.  Plaintiff recited an alleged use of excessive force on November 1, 2017, a date which has not yet occurred, but did not attribute such use of force to any particular individual, including the named defendants.  The original complaint filed herein does not include the detailed injuries he sets forth in his motion.

But even if plaintiff intended to reference the November 1, 2013 use of force by defendants Williamson, Molten, and Bookout, plaintiff's use of force allegations, taken together, do not demonstrate a common individual sufficient to connect a 2013 discrete use of force with the use of force required in response to the 2017 melees, and do not demonstrate a pattern.  In addition, plaintiff's claims concerning the denial of medical care and issues concerning the general conditions of confinement are too vague and conclusory, and are wholly unrelated to the

discrete use of force at issue in the instant complaint.

Plaintiff asks the court to apply the continuing violation doctrine to his motion. The continuing violations doctrine is not a cause of action, but rather is an equitable doctrine designed "to prevent a defendant from using its earlier illegal conduct to avoid liability for later illegal conduct of the same sort." O'Loghlin v. County of Orange, 229 F.3d 871, 875 (9th Cir. 2000). To establish a continuing violation, a plaintiff must show "a series of related acts against a single individual . . . that . . . are related closely enough to constitute a continuing violation." Green v. Los Angeles County Superintendent of Schools, 883 F.2d 1472, 1480-81 (9th Cir. 1989). However, the mere continuing impact from a past violation is not actionable under the continuing violation doctrine. Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001). In the instant motion, plaintiff fails to allege a series of related acts against a single individual. Rather, plaintiff attempts to connect unrelated incidents without specific factual support. His allegations fail to suggest that application of the continuing violation doctrine is appropriate here.

In addition, plaintiff's request for transfer appears to involve a change in his custody level. Inmates do not have a constitutional right to be housed at a particular facility or institution or to be transferred, or not transferred, from one facility or institution to another. Olim v. Wakinekona, 461 U.S. 238, 244-48 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam). Also, an inmate does not have a constitutional right to any particular classification. Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987).

Moreover, plaintiff cannot bring new allegations into his suit by means of a motion for a preliminary injunction. Otherwise, plaintiff could circumvent the requirement that he exhaust administrative remedies by bringing new allegations into his suit through such a motion. Plaintiff must also demonstrate that his claims are likely to succeed, but plaintiff's claims cannot succeed if the allegations in his motion for a preliminary injunction were not raised in the operative pleading. See Hunter v. Hazelwood, 2006 WL 925142, at *4 (W.D. Wash. Apr.10, 2006) (denying motion for preliminary injunction because it contained new allegations not included in the original complaint that did not involve the defendants and appeared not to have been

exhausted administratively).

In this motion for injunctive relief, plaintiff seeks relief based on various claims not included, and individuals not named as defendants, in the operative pleading. In the complaint, plaintiff alleges that defendants Williamson, Molten, and Bookout used excessive force on plaintiff on November 1, 2013. In the instant motion, plaintiff challenges actions taken by various nonparty individuals in 2017. None of these new allegations are at issue in plaintiff's complaint, and therefore will not receive a trial on the merits in this action.

Finally, the requested injunction prohibiting correctional officers from entering the law library improperly infringes in prison officials' ability to discipline plaintiff, as necessary, and to maintain the security and safety of the prison. See Bell v. Wolfish, 441 U.S. 520, 546 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." (citations omitted)). "[A]bsent the existence of exceptional circumstances not present here, the Court will not intervene in the day-to-day management of prisons." Lopez v. Shiesha, 2012 WL 6719555, at *4 (E.D. Cal. Dec. 21, 2012) (citing Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (prison officials entitled to substantial deference); Sandin v. Conner, 515 U.S. 472, 482-83 (1995) (disapproving involvement of federal courts in the day-to-day management of prisons).).

For all of these reasons, plaintiff's motion should be denied without prejudice.

III. Request for Extension

On June 19, 2017, plaintiff filed a declaration, signed June 16, in which he declares that his law library access was interrupted. Plaintiff avers that on May 24, 2017, the warden told the captains to "watch Howard, he's coming to B-Facility," and since that time, plaintiff states he has been racially targeted by numerous correctional officers. (ECF No. 24 at 1.) In addition, plaintiff claims that "the B-Facility librarian refused to make copies of the original dates," and forced plaintiff to change dates of proof that plaintiff tried to get copies and obtain law library access. (Id.) Accordingly, plaintiff asks for an additional sixty days in which to file his opposition.

On June 19, 2017, plaintiff also filed a motion for extension of time, signed June 15, 2017,

in which he asks the court to "impose a cease and desist [sic] of all punitive actions that can be construed as excessive and retaliatory." (ECF No. 26 at 1.) Plaintiff claims that his filing is an "addendum" to his original suit of retaliation and excessive force. Plaintiff appears to contend that peace officers are filing false evidence, and failing to produce evidence in an effort to positively identify plaintiff as being involved in several melees at High Desert State Prison. Plaintiff provides an exhibit confirming that on April 8, 2017, a rules violation report ("RVR") was issued against him for allegedly participating in a riot on April 4, 2017, and a hearing was held on May 1, 2017. (ECF No. 26 at 24, 27.) Plaintiff then recites a series of incidents from 2013; claims he's not supposed to be around defendants Williamson, Molten, and Bookout because of this lawsuit, but that Williamson has returned to C-Facility, allegedly threatening plaintiff's safety; and repeats allegations concerning the January and April 2017 melees, claiming that the "prison is pushing the agendas of certain ethnic groups (racial motivation) or because of large financial reasons (black market)." (ECF No. 26 at 5.) Plaintiff claims he was placed in administrative segregation from April 4, 2017, until April 14, 2017, and claims various constitutional rights were violated during the melees and RVR process. Since he was put in segregation, plaintiff was denied his legal property until May 19, 2017. Finally, plaintiff complains that Lt. Hanie, Lt. Garcia, Captain Clough and defendant Williamson signed the lock up order to illegally keep plaintiff away from his legal property. (ECF No. 26 at 6.) Plaintiff cites these examples to show that prison staff are retaliating against plaintiff based on his lawsuit but also coordinate violent racial attacks. Plaintiff seeks a "cease and desist" pending a Department of Justice investigation.

First, plaintiff is informed that his motion cannot serve as an "addendum" to his complaint. Local Rule 220 requires that a complaint be complete in itself without reference to any prior or superseded pleading.

Second, as set forth above, this action proceeds on plaintiff's Eighth Amendment claims against defendants Williamson, Molten, and Bookout, based on the use of force on November 1, 2013. Plaintiff's complaint raised no First Amendment claims and included no allegations concerning retaliation or racial discrimination. (ECF No. 1.)

Third, to the extent plaintiff wishes to challenge the RVR resulting from the 2017 melees, he must do so in a separate civil rights action. Even if defendant Williamson was involved in addressing the 2017 melee, either by use of force or in the subsequent RVR proceedings, plaintiff is first required to exhaust his administrative remedies[3] as to such claims, and then must file a new civil rights action. Similarly, if plaintiff believes that prison staff are retaliating against plaintiff because of the instant action or otherwise, he must pursue such retaliation claim in a separate action, after he has exhausted his administrative remedies.

Fourth, the pendency of this civil rights action does not preclude defendant Williamson from having any contact with plaintiff at High Desert State Prison.

Finally, plaintiff has demonstrated the need for an extension of time. However, defendants' motion for summary judgment was filed on March 7, 2017. Plaintiff has previously received an additional sixty days in which to file his opposition. Therefore, plaintiff should focus his efforts on completing his opposition rather than further attempting to broaden the scope of this litigation. Plaintiff is granted until August 18, 2017, in which to file his opposition.

Conclusion

Accordingly, IT IS HEREBY ORDERED that that:

1. Plaintiff's motions for extension of time (ECF Nos. 24 & 26) are partially granted; and

2. Plaintiff shall file his opposition to the motion for summary judgment on or before August 18, 2017.

IT IS RECOMMENDED that plaintiff's motion for injunctive relief (ECF No. 25) be denied without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days

---

[3] The Prison Litigation Reform Act ("PLRA") provides that, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In other words, proper exhaustion is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). Proper exhaustion requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules, including deadlines. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

9

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 21, 2017

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/cw/howa1200.tro